## NAYLOR et al. v. FLOOR.

No. 3096.   Decided January 29, 1918.   (170 Pac. 971.)

1. ANIMALS—TRESPASS—DAMAGES—SUFFICIENCY OF EVIDENCE.   In an action for damages caused by defendant's sheep trespassing on a growing crop of wheat, evidence that plaintiff sowed sixty-five acres of wheat in September, that during October defendant at divers times permitted his sheep to trespass thereon, that ten acres of the land so planted went to grass, that thirteen acres was totally destroyed, that twenty-seven acres only produced one-fifth of a normal crop, that the remaining fifteen acres produced fourteen or fifteen bushels to the acre, which was about a normal crop, that it cost $2.50 an acre to harvest and sack the wheat and ten cents a bushel to transport it to the nearest market, that this was the only expense necessary to be incurred after the wheat was planted for the reason that it was a dry-farm crop, that plaintiffs harvested 283 bushels, and that its market value was $2.20 per hundredweight or $1.32 a bushel at the nearest market, disclosed every element and factor necessary to determine the damage, and was ample to sustain a verdict for $170.62.   (Page 383.)

2. DAMAGES—GROWING CROPS—TRESPASS—MEASURE OF DAMAGES. Where plaintiffs planted a crop of wheat in the fall with the view of harvesting it the next year and marketing it at that time if they so desired, and it was a dry-farm crop, requiring no irrigation or cultivation, and it was injured by defendant's sheep in October, when it was too late to re-seed the land or put it to a more beneficial use, an instruction that the measure of damages was the difference between the market value of the crop before and after the alleged damage, and that this might be calculated by finding what the market value of the entire crop would have been at maturity if not injured and deducting its entire market value at maturity in its injured state, and that from this difference there must be deducted its proportion of the cost of harvesting, marketing, and bringing the crop to maturity, stated a substantially correct measure of damages, as the present value of a growing crop must be determined with reference to its proper yield and harvest less the expense of putting it in a marketable condition.[1]   (Page 384.)

Appeal from District Court of Salt Lake County, Third District; *Hon. W. H. Bramel*, Judge.

---

[1] *Cleary* v. *Shand*, 48 Utah 640, 161 Pac. 453; *Farr* v. *Griffith*, 9 Utah 416, 35 Pac. 506.   Explaining *Lester* v. *Highland Boy Gold Mining Co.*, 27 Utah 470, 76 Pac. 341, 101 Am. St. Rep. 988, 1 Ann. Cas. 761.

Action by W. S. Naylor and another against Nicholas Floor.

Judgment for plaintiffs. Defendant appeals.

AFFIRMED.

*E. O. Leatherwood* for appellant.

*Booth, Lee, Badger & Rich* for respondents.

THURMAN, J.

The questions presented by this appeal relate to the sufficiency of the evidence and measure of damages. Plaintiffs are the owners of land in Tooele county, and in the fall of 1915 had a crop of grain growing thereon. In October following the defendant, who is the owner of a band of sheep, permitted them to trespass on plaintiff's said crop and partially destroy it. Plaintiffs brought suit for the recovery of $675 as damages. The case was tried to a jury, and a verdict rendered for plaintiffs in the sum of $170.62. Judgment was entered accordingly. Defendant appeals, and assigns as error: (1) The refusal of the court to instruct the jury that the evidence was insufficient to sustain a verdict for more than nominal damages; and (2) the court erred in its instruction relating to the measure of damages. These alleged errors will be considered in the order above named.

There is substantial evidence tending to show that plaintiffs, in September, 1915, seeded to wheat sixty-five acres of the land in question; that during October next following the defendant at divers times permitted his sheep to trespass thereon; that ten acres of said land so planted went to grass; that thirteen acres of the wheat was totally destroyed; that twenty-seven acres only produced one-fifth of a normal crop and the remaining fifteen acres produced fourteen or fifteen bushels to the acre, which was about a normal crop; that it cost $2.50 per acre to harvest and sack the wheat, and ten cents per bushel to transport same to the nearest market.

This was the only expense necessary to be incurred after the wheat was planted, for the reason that it was a dry-farm crop. The plaintiffs harvested 283 bushels from fifty-five acres, and the market value thereof was $2.20 per hundredweight or $1.32 per bushel at the nearest market.

The foregoing statement, which, as before stated, is supported by substantial testimony, discloses every element and every factor necessary to determine the damage plaintiffs sustained, under the rule declared by the court for determining the damage, which will be considered later on in this opinion. It thus appears we have the number of acres planted (65), the number of acres that went to grass (10), the number of acres totally destroyed (13), the number of acres partially injured, which produced one-fifth of a crop (27), and the number of acres uninjured (15). As appears from the testimony, if the 65 acres planted, less the 10 acres which went to grass, had not been injured by the sheep, the land would probably have produced 14 bushels to the acre, or a total of 770 bushels, but, as plaintiffs could only harvest 283 bushels, there was a loss of the difference between these two amounts, or 487 bushels, lost on account of the injury. This quantity at $1.32 per bushel, the market price at the nearest market, amounts to $642.84. This sum, less the cost of harvesting and sacking at $2.50 per acre, or $137.50 for the fifty-five acres, and ten cents a bushel for transporting to market the 487 bushels, or $48.70, leaves as net damage to plaintiffs the sum of $456.64. The jury rendered a verdict for only $170.62. The evidence is ample to sustain the verdict, unless the court erred in its instructions relating to the measure of damages. That question will now be considered.

The instruction assigned as error reads as follows:

"The measure of damage is the difference between the market value of the crop before the alleged damage was done and the market value of the crop after the alleged damage was done. This may be calculated by finding the market value the entire crop would have at maturity if no injury thereto had been done, and deducting therefrom the entire market value of the crop at maturity in its alleged

injured state. The difference, if any, will enable you to calculate the amount of damage. From this amount so found, if you so find, you must deduct its proportion of the cost of harvesting, marketing, and bringing the crop to maturity."

Appellant challenges the validity of this instruction, except the first sentence thereof. This sentence, he insists, states the correct rule for measuring the damages in cases of this kind. The remainder of the instruction it is contended, is vicious and in conflict with the well settled law of this state as declared by the decisions of this court. In support of this contention appellant cites a case decided by this court, *Lester* v. *Highland Boy Gold Mining Co.*, 27 Utah, 470, 76 Pac. 341, 101 Am. St. Rep. 988, 1 Ann. Cas. 761, and quotes the first paragraph of the syllabi, as stating the rule for the measure of damages in this jurisdiction. The language quoted does not, to the fullest extent, reflect the opinion of the court in that case. The paragraph quoted reads as follows:

"The true measure of compensation for injury to or the destruction of growing crops is the value of the crops in the condition they were in at the time of their injury or destruction, and not the market value at the time of maturity or during the market season."

Upon an examination of the opinion, it will be found that the court was dealing with an instruction of the trial court which had been assigned as error, and the opinion must be read with that instruction in view. The trial court in that case gave the following instruction, which was excepted to by appellant:

"The plaintiffs in this case are entitled to recover only such damages to their crops of lucern, potatoes, oats, corn, beets, wheat, and such things as are sued for as they were worth at the time when destroyed or injured, and at the place where injured or destroyed. In other words if they were injured at or before the time of harvest in the different years respectively, then in arriving at the damages you must take the market value of such products and crops not later than the prices prevailing at the time of such harvest or during the market season."

The instruction, without further explanation or modification, was manifestly erroneous. It left out of consideration entirely the expense incident to maturing, harvesting, and marketing the crop subsequent to the injury complained of.

That this court considered these matters material and pertinent to a determination of the damages is manifest upon reading the language of the court in commenting upon the erroneous instructions. In 27 Utah, at page 472, 76 Pac. at page 342 (101 Am. St. Rep. 988, 1 Ann. Cas. 761), the court says:

"This instruction, considered as a whole, is clearly erroneous. The rule stated in the first sentence has the support of authority, but, in attempting to explain it in the last sentence, the court virtually set the rule aside, and misdirected the jury by stating that, in arriving at the damages, they must take the 'market value of such products and crops not later than the prices prevailing at the time of such harvest, or during the market season.' While in cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land in dispute, and on other similar lands in the immediate neighborhood cultivated in like manner, the stage of growth of the crops at the time of injury or destruction, the expenses of cultivating, harvesting, and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops, and while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value of the crops in the condition they were in at the time of their injury or destruction, and not the market value at the time of maturity or during the market season."

It is true the court says, "The true measure of compensation is the value of the crops in the condition they were in at the time of their injury, * * * and not the market value at the time of maturity or during the market season," but this must be taken in connection with the other parts of the opinion to which we have referred. In order to determine the value of the crop at the time and place of the injury, it is quite clear that this may be done as suggested by the court in that case, by taking into account the market value when harvested and of the expense incident to placing the crop in a marketable condition after the injury complained of. To contend that the court, by its opinion, declared the measure of damages to be the value of the crop in the condition it was at the time of its injury or destruction, without qualification, is not treating the opinion fairly, and leads to a manifest

absurdity.   A crop of grain only an inch high, or less, has
no present value whatever; it is worthless even for grazing
purposes, and certainly is not fit for anything else.   If it is
trespassed upon and injured or destroyed, there is no remedy
beyond nominal damages, unless the potential value of the
crop or its probable yield at harvest is taken into considera-
tion.   The present value of a growing crop at any stage must
be determined with reference to the probable yield and har-
vest, less the expense, after the injury occurs, of putting the
crop in a marketable condition.   This we believe to be the
spirit and meaning of the decision in the Lester Case.   Viewed
in this light, we are not inclined to hold that the instruction
complained of in the case at bar is in conflict with that deci-
sion.   If the instruction excepted to in that case had gone
further and informed the jury that it must deduct from the
market value the expense of bringing the crop into a market-
able condition, we doubt if the case would have been reversed.
In a very recent decision of this court, in a case where an
injury was caused by sheep trespassing on growing crops, the
court said:

"So, in an action for growing crops, the measure of damages is their
value at the time of their destruction.   But in estimating them the
probable yield and value of the crop, had it progressed to maturity,
may be shown."   *Cleary* v. *Shand*, 48 Utah 640, 161 Pac. 453.

In that case the question as to the true measure of damages
was not before the court in concrete form; the only question
for the court's consideration was the error of the trial court
in permitting witnesses, over the objection of appellant, to
answer the question, "What in your judgment was the dam-
age done," etc. ?   The question was objected to as calling for
a conclusion respecting the ultimate fact to be tried to the
jury.   The language above quoted relating to the measure of   ·
damages was used by the court as illustrating what might be
proper matter for consideration in determining the damages
to growing crops.   While the case, for this reason, is not
authority to the extent that it would have been if the language
had been applied to a point directly in issue, it nevertheless
indicates the mind of the court, to a limited extent at least,

as to what may be considered in determining the measure of damages. It is perfectly manifest if the probable yield of the crop at maturity may be considered in determining the damages, the expense, etc., of bringing the crop to maturity must of necessity be considered; otherwise the person damaged might recover more than he is justly entitled to.

There is an earlier decision of this court relating to the measure of damages, but not to growing crops. However, there is a strong analogy between that and the present case, and we feel justified in referring to it for that reason. In *Farr* v. *Griffith*, 9 Utah, 416, 35 Pac. 506, plaintiff brought an action against defendant for breach of contract in failing to furnish water to supply an ice pond. The court gave the following instruction as to the measure of damages, which was excepted to by appellant:

"If you find for the plaintiff, gentlemen, the measure of damages will be the value of the ice that the plaintiff might, by reasonable diligence, have put up in the icehouses; the value of the ice in the icehouses, that they failed to put up on account of the failure of the defendant to supply the usual amount of water, less the cost of putting such ice in the icehouses, the value of the ice in the icehouses, less the cost of putting it there."

Appellant in that case contended that the true measure of damages was the value of the ice on the pond, just as appellant here contends that the measure of damages is the value of the crop at the time and place of the injury. This court in that case held that the instruction was substantially correct.

From the foregoing review of the decisions of this court, when treated fairly with the view of determining their meaning, the conclusion cannot be rationally drawn that the instruction complained of in this case conflicts with the law as declared by this court.

In the first case cited the instruction, as we have shown, did not go far enough, and possibly left the jury to conclude that the market value at harvest, without deducting expenses of maturing, harvesting, and marketing, was the measure of damages. These essential factors are covered by the instruction excepted to in the present case. In the second case above

cited, as appears from the analysis we have made, the measure of damages was not squarely in issue, but what the court said in respect to that subject, so far as it went, stated the rule which we believe to be correct, and which we believe the court in the present case substantially followed in the instruction complained of. The last case cited, although not a case of damage to growing crops, is, nevertheless, analogous in principle and is in line with the decisions in the other cases referred to. We are not unmindful of the fact that there is a great variety of opinion among the courts as to the measure of damages in cases of this kind. Different rules have been promulgated as the measure of damages. Some have held that the rental value of the land for a year, with the cost of planting and bringing forward the crop until the time of the injury, is the true measure; others have held that what the crop in its immature state would bring at a sale is the correct rule; and others have held, in line with the instruction in this case, that proof of the probable yield and the actual yield, the difference between the two, with deduction therefrom of the expenses incident to maturing, harvesting, and marketing, is the better rule; while numerous, and perhaps the greatest number of, cases hold that the value of the crop at the time and place of injury is the true measure of damages; but, as to the last, it may be said, as before suggested, that if potential value is meant, and that is the most reasonable and just view to take, then perhaps none of the foregoing rules are subject to serious objection. It is not our purpose in this opinion to declare in favor of one rule as against another. The questions we are called upon to determine are: Is the instruction complained of erroneous, and did the court err in giving it to the jury? The court is of the opinion that under the facts of this case the instruction was substantially correct; that it was the rule of reason and justice and placed the matter before the jury in such form that it could apply it to the facts in the case and mete out substantial justice to the litigants. The plaintiffs planted their crop in the fall of 1915 with the view of harvesting the same in 1916 and marketing the same at that time if they so desired. It was a dry-farm crop, requiring no irriga-

tion or cultivation, so that nothing was left to be done but to harvest it and place it in a marketable condition. When it was injured by the defendant's sheep in October, 1915, it was then too late to re-seed or put the land to a more beneficial use. We confess our inability to understand why a rule which will permit plaintiffs to obtain the value of their crop destroyed, less all the expenses incurred, after its destruction, in harvesting, sacking, and marketing it, is not a just and equitable rule. It put plaintiffs in statu quo as near as practicable under the circumstances. It is a little unfair to them in one aspect of the case, because it probably cost them nearly as much to harvest a light crop, such as they did harvest, as it would have done to harvest a normal crop, and by this measure of damages they not only had to pay for harvesting the light crop they did harvest, but likewise had to pay for harvesting that which they did not produce. But plaintiffs are not complaining, and defendant ought not to. The measure of damages adopted by the trial court in the instruction complained of, in principle at least, is sustained by the great majority of well-considered cases decided in recent years. *Jones et al.* v. *Cooley Lake Club,* 122 Mo. App. 113, 98 S. W. 82; *United States Smelting Co.* v. *Sisam,* 191 Fed. 293, 112 C. C. A. 37, 37 L. R. A. (N. S.) 976; *Candler et al.* v. *Washoe Lake Reservoir & Galena Creek Ditch Co.,* 28 Nev. 151, 80 Pac. 751, 6 Ann. Cas. 946; *Gulf, C. & S. F. Ry.* v. *McGowan,* 73 Tex. 355, 11 S. W. 336; *S. C. Smith* v. *Derias Hicks,* 14 N. M. 560, 98 Pac. 138, 19 L. R. A. (N. S.) 938; *Northern Colorado Irr. Co.* v. *Richards,* 22 Colo. 450, 45 Pac. 423; *De Arman* v. *Oglesby et al.* (Okl.) 152 Pac. 356; *M., O. & G. Ry. Co.* v. *Brown,* 41 Okl. 70, 136 Pac. 1117, 50 L. R. A. (N. S.) 1124; *M. P. Fuhrman et al.* v. *Interior Warehouse Co.,* 64 Wash. 159, 116 Pac. 666, 37 L. R. A. (N. S.) 89; *Shotwell* v. *Dodge,* 8 Wash. 337, 36 Pac. 254; *Berg* v. *Yakima Valley Canal Co.,* 83 Wash. 451, 145 Pac. 619, L. R. A. 1915D, 292.

For other cases to the same effect, and also cases contra cited by appellant, see 6 Ann. Cas., note at page 949.

The instruction complained of by appellant is adapted to a case where the crop is only partially injured and not wholly

destroyed. Only that portion of the crop destroyed is charged with the subsequent expense. In the case of a total destruction the principle is the same. The entire crop that would have been produced is charged with the expense incurred after the injury. We see no reason why damage to growing crops in most any conceivable case cannot be determined by the application of these principles. Of course, the plaintiff in this class of cases would not be entitled to damages in any sum if it should appear from the evidence that, even if the injury had not occurred, no crop would have been produced on the land.

For the reasons above stated, it is ordered that the judgment be affirmed; respondents to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.