## MASON v. THWING.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. DEEDS—RESERVATION OF WATER RIGHT—EFFECT—APPURTENANCES.
    Where the owner of land on selling a portion thereof on which there were springs, reserved the right of taking water from the springs, and conveying it to buildings on the remainder of the land, such right became an appurtenance to the remainder.

2. SAME—CONSTRUCTION OF DEED—PROPERTY CONVEYED—WATER RIGHTS.
    Where the right to take water from two springs on the land of another, and to convey it to farm buildings, was an appurtenance to cer-

tain premises, and at the time water was being taken from one of the springs, the owner of the land having such appurtenance conveyed it with the privilege of taking water from "the spring as at present used," and "all the appurtenances" were conveyed, the grantee took the right to take water from both springs.

**3. SAME—NOTICE OF EASEMENT—BONA FIDE PURCHASER.**
  Where at the time defendant purchased land the owner of adjoining land was taking water from a spring on the land purchased by defendant, and all the conveyances of the two tracts from a common predecessor in title, under which conveyances the right to the water was being rightfully exercised, were of record, defendant was not a bona fide purchaser of the waters of the spring.

Appeal from Special Term, Onondaga County.

Action by Lizzie N. Mason against Charles B. Thwing. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Edward O. Johnson (Homer Weston, of counsel), for appellant.
Edward D. Chapman (George B. Dolsen, of counsel), for respondent.

McLENNAN, P. J. Prior to April, 1855, one John Sprague was the owner of the entire premises involved in this litigation, which consisted of a farm of about 70 acres situated in the town of Manlius in the county of Onondaga, upon either side of the "High Bridge Road," so called. On the 17th day of April, 1855, the said John Sprague, by warranty deed, conveyed the portion of the premises lying upon the easterly side of the highway, consisting of about three acres, more or less, to one Ichabod Goodfellow, which deed contained the following reservation:

"Reserving thereout the cider mill lot with its water rights and privileges thereto belonging and appertaining, or for any other hydraulic purpose. Also the right of throwing and carrying out on the east side of said cider mill the refuse, litter, and pumice and cleanings from said mill. Also the right of taking the water from two springs on the east side of said road, and conveying the same to the house and barn of said John Sprague by means of a hydraulic ram and fixtures in a manner similar to its present form and use, so as to convey a stream in a one-half lead or cement pipe or other suitable conductor of that size, with the right of always repairing, renewing, or changing the manner of bringing said water as may be proper and suitable hereafter."

The deed from Sprague to Goodfellow contained the usual covenant for quiet possession of the demised premises, and warranty of title thereto. At the time of such conveyance all the farm buildings of John Sprague were located upon that portion of the premises on the westerly side of the highway, upon which he resided, and it appears that the only natural supply of water for the same was the two springs reserved in the deed to Goodfellow. Through mesne conveyances from Goodfellow, Sprague's grantee, some of which deeds referred to the reservation of the springs in question, and others of which did not, the defendant became the owner of the three acres of land upon which the springs were situated. Sprague, however, never conveyed or attempted to convey what he had reserved from the grant to Goodfellow to the defendant, or to any of the grantees of Goodfellow. In other words, the defendant and his grantor acquired

by deed nothing more than Goodfellow took by virtue of his deed from Sprague, the original grantor of the three-acre parcel. On the 1st day of April, 1856, Sprague conveyed the premises upon the westerly side of the road (now owned by the plaintiff) to one Seneca Eddy, by warranty deed, which contained the following grant:

"Also the right and privilege of taking the water from the spring as at present used below the road by the hydraulic ram placed above the ditch that conveys the water to the cider mill, and forcing the said water through any pipe with not more than a half-inch bore for the use of house and barn on said farm, with right of ingress and egress at any and all times for the purpose of keeping said hydraulics, etc., in good order and repair, said Sprague excepting and reserving to himself, his heirs and assigns, forever, the right and privilege of widening, deepening, and extending the ditch on said lands hereby conveyed, and of keeping the same clean so as to secure the greatest possible flow of water through the same to said cider mill, and of ingress and egress therefor; but neither party in the exercise of these privileges shall do any unnecessary damage. Together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, dower, right of dower, property, possession, claim, and demand whatsoever as well in law as in equity of the said parties of the first part (Sprague and his wife) of, in, or to the above-described premises, together with the appurtenances, unto the said party of the second part (Eddy), his heirs and assigns forever."

By mesne conveyances the plaintiff became the owner of the real estate and all the rights conveyed by John Sprague to Seneca Eddy. It will be observed that the deed from Sprague to Eddy in terms conveyed "all the right and privilege of taking the water from the spring as at present used below the road," and that the words "springs" is not used. It is therefore insisted on behalf of the defendant that Eddy did not acquire, by virtue of such conveyance, nor did the plaintiff by mesne conveyances, any right to take the waters from any spring upon the defendant's lands, except the one which was at that time used to supply the premises now owned by the plaintiff with water. The spring which was then being used to supply the lands on the westerly side of the road, at least 17 years before the commencement of this action became useless, and the ram was thereupon located so as to convey to those premises water from the other spring, and until interference therewith by the defendant such spring was continuously used for that purpose.

It is contended on the part of the plaintiff that the clause in the deed from Sprague to Eddy, plaintiff's grantor, granting and conveying all the appurtenances to the lands therein described, had the effect of conveying all the rights reserved by Sprague from his conveyance to the defendant's grantor, Goodfellow. The conflicting claims of the parties to this action as to the proper construction of the conveyance to Eddy present the only question to be determined upon this appeal. We are of the opinion that the reservation of the use of the springs contained in the deed from Sprague to Goodfellow for the use of the premises then owned by Sprague and subsequently acquired by the plaintiff became and was an appurtenance to plaintiff's property, and that it passed to her by virtue of the mesne conveyances of her predecessors in title. It will be noted that the grant

in the deed from Sprague to Eddy, plaintiff's grantor, is exceedingly broad and comprehensive. The grantor thereof parted with every vestige of right which he had, or which appertained to the premises, excepting only the right to keep the ditch connected with said springs clean and free, so as to secure the greatest possible flow of water through the same for the benefit of the cider mill, and of ingress and egress for that purpose. The original reservation in the Goodfellow deed was for the use of the farm buildings standing upon the premises west of the highway, and concededly no use could be made of the water under that reservation for any other purpose. Therefore, when Sprague conveyed to Eddy the premises upon which those buildings stood, he could have had no object or purpose in retaining in himself any right or interest in the waters of either of the springs in question. The general rule of law applicable to cases of this character is that:

"When a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. * * * The idea and definition of an easement incident to real estate granted is a privilege off and beyond the local boundaries of the land or tenement conveyed. Where there is a dominant, there is always a servient, tenement. But it is not necessary they should be contiguous to each other. The proximity of the one to the other is of very little comparative importance in determining the question whether the easement passes by a conveyance of the dominant tenement. It depends rather upon the nature, character, and purpose of the easement, its relation to the subject-matter of the grant, its accustomed use in connection with it, and its necessity to the value, and to the beneficial and convenient use of the premises granted." Angell on Watercourses (Perkins' Ed.) § 153.

In the case at bar all the considerations referred to by the learned author indicate that the right reserved in the original grant of the three acres by Sprague constituted an appurtenance for the use and benefit of the 66 acres to which he retained title, and that such appurtenance was valuable, almost necessary, to the reasonable and proper enjoyment of the lands thus retained.

In Blackman v. Striker et al., 142 N. Y. 555, 37 N. E. 484, the rule is stated in the headnote as follows:

"A deed must be held to convey all the interest the grantor has in the land, unless the intent to pass a less interest appears by express terms, or is necessarily implied from the terms of the grant."

When Sprague conveyed to Eddy, one of his most important interests in the premises conveyed consisted of his right to take water from the two springs reserved out of his grant to Goodfellow for the use of the farm buildings upon the land which he conveyed to Eddy; and, considering the broad language of the clause by which he conveyed all the appurtenances, we think it ought not to be held that he intended to pass a less interest than he then owned in said premises. Schoonmaker v. Hoyt, 148 N. Y. 425, 42 N. E. 1059.

In French v. Carhart, 1 N. Y. 96, it was said:

"A reservation in a deed of a right or privilege should be construed in the same way as a grant by the owner of the soil of a similar right or privilege."

The case at bar would not have been different, so far as the defendant is concerned, if Sprague, his original grantor, had, by separate

deed, conveyed the waters of the springs in question to another party. If he had done so, certainly the defendant could not have claimed to be the owner and entitled to the use of the waters of the springs to the exclusion of a subsequent grantee of property to which such springs were appurtenant. In this case it cannot be claimed that the defendant was a bona fide purchaser, as claimed by him, of the waters of the springs in question, for the reason that at the time defendant purchased the premises the plaintiff was actually taking the water from the second spring in precisely the same manner as at the time of the commencement of this action, and had been so doing for nearly 17 years prior thereto, and besides, all the conveyances which would have disclosed the exact extent of title held by plaintiff's grantor were upon record, and their contents presumably known to the defendant.

Attention has been called to the case of Root v. Wadhams, 107 N. Y. 384, 14 N. E. 281, and other similar cases, in which it is held:

"By the word 'appurtenances' nothing passes except such incorporeal easements, rights or privileges, as are strictly necessary and essential to the proper enjoyment of the estate granted; and mere convenience is not sufficient to create such a right or easement."

Each one of the cases holding this doctrine to which we have been cited was decided upon its own peculiar facts, which do not bring it within the principle we deem applicable to the case under review, and we think they are not decisive of the case at bar. But, independently of the strict legal meaning of the word "appurtenances" as defined by the authorities and long usage, we think the fair and reasonable interpretation of the deed from John Sprague to Eddy is that he thereby conveyed, and intended to convey, all the right, title, and interest which he had in and to the two springs on the easterly side of the highway which he reserved to himself out of the conveyance which he had previously made to Goodfellow, defendant's grantor; that such interpretation should be given to such grant notwithstanding the word "spring" instead of "springs" was used; that the right to make use of such springs in the manner specified in the reservation in the Goodfellow deed was an appurtenance to the plaintiff's property, and that it passed to her grantor, and by mesne conveyances to her. It follows that the judgment appealed from should be reversed, and a new trial granted.

Judgment reversed, and new trial granted, with costs to the appellant to abide the event, upon questions of law only, the facts having been examined, and no error found therein. All concur.