**DENVER & RIO GRANDE WESTERN R. CO. v. HIMONAS.**

No. 4242.

United States Court of Appeals Tenth Circuit.

July 5, 1951.

Rehearing Denied July 28, 1951.

Grant H. Bagley, Salt Lake City, Utah (W. Q. VanCott, S. N. Cornwall, Dennis McCarthy and Clifford L. Ashton, Salt Lake City, Utah, on the brief), for appellant.

Brigham E. Roberts, Salt Lake City, Utah and Edward Sheya, Price, Utah (Calvin W. Rawlings, Harold E. Wallace, Parnell Black, Wayne L. Black, Salt Lake City, Utah and B. L. Dart, Price, Utah, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellee, a farmer and rancher near Sunnyside, Utah, sued the appellant Railroad Company, claiming a prescriptive right for the use and maintenance of an irrigation flume across the Railroad's right of way. It was alleged that since 1926, the appellee and his predecessors in interest had used the flume as a part of his irrigation ditch to take surface or flood water from Grassy Trail Creek on the east side of the railroad, to the west side, where it was stored in three reservoirs on the appellee's land for irrigation and livestock watering purposes. Then it was alleged that sometime in the Fall of 1947, the Railroad Company disconnected the flume where it passed under a bridge across the railroad right of way, as a result of which the appellee was deprived of the use of the water from Grassy Trail Creek, to the damage of his crops and livestock in the sum of $25,000, and for loss of pasture on 5000 acres of winter range, to his damage in the sum of $1500. The complaint also sought injunctive relief for the restoration of the flume and the quiet enjoyment thereof.

The trial court sustained a motion for a directed verdict and entered judgment for the Railroad, on the ground that the appellee could not legally acquire a prescriptive right to maintain his ditch across the railroad right of way. We reversed, holding that there was no legal impediment to the acquisition of the easement by prescription, provided the flume was maintained and used so as not to interfere with the use of the right of way by the Railroad for railroad purposes. Himonas v. Denver & Rio Grande Western R. R. Co., 10 Cir., 179 F.2d 171.

On a trial after remand, the court submitted to the jury, under proper instructions, the factual issue whether appellee and his predecessors in interest had used the flume openly and notoriously for the prescriptive period, and instructed them that if they found that issue in favor of appellee, they could compensate him for the injury proximately caused by the Railroad's disconnection of the flume. The verdict was for appellee in the sum of $15,370.00.

Pursuant to this verdict, the court made special findings to the effect that the appellee and his predecessors in interest had maintained the irrigation ditch for more than twenty years immediately preceeding the year 1948, and during that time had openly, notoriously and continuously used the ditch for the conveyance of water under the bridge and across the right of way as alleged; that such use in no way damaged, endangered or hindered the Railroad's full use of its right of way for railroad purposes. The court also found, and it is admitted, that in the year 1948, the Railroad, without notice to or consent of appellee, disconnected or removed a portion of the flume which carried the water across the right of way. And, the court went on to find that by such interruption, appellee was prevented from conveying his irrigation and stock water across the railroad right of way, as a consequence of which, appellee suffered loss of his agricultural crops, a portion of his lamb crop, damage and destruction to permanent crops on his land, and the normal use of his winter, fall and spring sheep range, located on land adjacent to his property. Judgment was entered for the amount of the jury verdict. After the trial of the case, and before final entry of the judgment, appellee, with the permission and consent of the Railroad, reconstructed the flume across the right of way, for the reasonable cost of $259.10, for which sum judgment was also entered against the Railroad.

On appeal, the Railroad does not further contest the appellee's right to the use and maintenance of the irrigation flume, or the judgment for the cost of its restoration. It does, however, vigorously assail the judgment for special damages for loss of the crops, livestock and rental value of his pasture land.

Invoking the rule that the establishment of the right to the beneficial use of the water is prerequisite to the recovery of any special damages for its deprivation, appellant suggests that appellee neither alleged nor offered to prove that he owned any water or water rights that could be conveyed through its flume under the right of way. And, our attention is called to the stipulation in the course of the trial to the effect that the court need not determine the title or the ownership of the water rights of which the appellee claims to have been deprived, and that the court made no such determination.

■ It is true that generally, the right to the use of water is requisite to a valid claim for damages for the deprivation of its use. Cash v. Thornton, 3 Colo.App. 475, 34 P. 268; Gianulakis v. Sharp, 71 Utah 528, 267 P. 1017. But here, the appellee alleged, and the court found from the evidence, that for twenty years, he and his predecessors had been taking overflow or flood water from Grassy Trail Creek through a ditch across the right of way for culinary and agricultural use on the lands. The Railroad Company laid no claim to the use of the water taken and did not contest the appellee's right to take or use it. When the appellee offered evidence tending to show its right to the use of the water, the Railroad objected, stating that there was no contest of water rights, and the consequent stipulation removed

from this case further consideration of the appellee's right to take the water, the deprivation of the use of which he seeks damages. Moreover, we think that the proof of continued use of the water conveyed through the flume for a period of twenty years, openly and notoriously, is sufficient to establish title as against one who claims no title, nor contests the right of use. See Chicago, B. & Q. R. Co. v. McPhillamey, 19 Wyo. 425, 118 P. 682.

Conceding arguendo appellee's right to the beneficial use of the surface water from Grassy Trail Creek, appellant denies that there is any evidence tending to show that in 1948, there was any such water available which could have been conveyed through the flume, and argues that he could not therefore recover any special damages for the obstruction of the flume in that year. And, the court was requested to so instruct the jury. There was evidence to the effect that for years past, the flood or surface water coming into appellee's ditch, together with the water from springs on the west side of the railroad, when stored in the reservoirs and ponds on appellee's land, was sufficient for his agricultural and stock-watering needs. And, there was evidence that the 1948 season was about normal.

Then, it is said that in any event, the water from the springs on the west side of the track was amply sufficient to fill the reservoirs and to furnish an adequate supply of water, and for that reason, appellee cannot claim special damage for the obstruction of the flume. But, there was evidence tending to show that because of its heavy mineral content, the water from the springs was unfit for irrigation and stock-watering purposes, unless it was mixed with the flood waters from Grassy Trail Creek. The evidence showed that the water from the springs and from the Creek came into the same reservoir from which it was used by the appellee for those purposes.

Complaint is made of the refusal of the court to permit the appellant to show that the appellee's reservoirs were full of water when the flume was disconnected, and that they remained full to furnish an adequate supply throughout the year 1948. Appellant also offered to prove that because of the sediment at the intake and the breaks in the course of the ditch, it was incapable of conveying water from the Creek to the reservoirs, and therefore served no useful purpose. This testimony was sought to be adduced by a witness who saw the farm, the reservoirs and the ditch in March, 1949. The condition of the ditch and the reservoirs in 1949 doubtless would have some relevant bearing upon its condition in 1948, but earlier in the trial, the appellant had successfully excluded evidence offered by appellee concerning damages to the crops and livestock in 1949, as a result of the obstruction of the flume. At the insistence of the appellant, the court confined the proof to the conditions existing during the year 1948, the period covered by the pleadings, and sustained appellant's objection to the amendment of the pleadings to claim damages up to the date of the trial.

The trial court took the position that since only damages for the year 1948 were involved, and the appellee had been precluded from proving the conditions existing at any other time, appellant's proof should also be limited to that year. While it would undoubtedly have facilitated the disposition of the controversy to have permitted enlargement of the issues to include damages incurred up to the date of the trial, and to have allowed proof by either party bearing upon this issue, since appellant elected to confine the issues to the year 1948, we do not think it can complain of the narrow compass in which the case was tried.

Appellee did not claim permanent damages for injury to his real estate or other property. He sought and obtained injunctive relief for restoration to its original state and condition, and temporary damages for the deprivation of its beneficial use for the year 1948. In support of this claim, there was proof to the effect that in the year 1948, appellee planted 4 acres of wheat, 2½ acres of corn, 2 acres of potatoes, and 35 acres of alfalfa. There

was also proof to the effect that these crops "burned up" because of the lack of water from Grassy Trail Creek. There was proof to the effect that in the Spring of 1948, appellee had 1578 head of sheep, which he was accustomed to lambing near ponds located in and around Section 27; that because of the water supply, this area was particularly advantageous as a lambing ground. Appellee testified that in 1947, he had an average of 120 per cent yield of his lambs in this area; that because of lack of water in 1948, he was compelled to take his sheep to an area three miles east of Grassy Trail Creek, and because of the unfavorable conditions there, his lamb crop was only 80 per cent; and that because of the lack of water during the year 1948, he was unable to graze his livestock on the 5000 acres of grazing land on both sides of the railroad track and near Section 27. Appellee showed in detail the cost of producing the crops and the lambs and their probable value at maturity, and the cost of reseeding the 35 acres of alfalfa. He also offered evidence of the fair rental value of the grazing lands, estimated at $2000.

The appellant objects to the consideration of the loss in the lamb crop as not within the pleadings, but we think the pleadings were adequate to include them, and in any event, they might have been amended to conform to the proof, and failure to do so would not effect the result of the trial on the issues tendered by the proof. See Rule 15(b), Fed.Rules Civ.Proc. 28 U.S.C.A.

Complaint is also made of the allowance of damages for the rental value of the pasture land, on the ground that there is no proof that the appellant owned it. But there was proof that he had used 5000 acres in and around his land to graze 1500 head of sheep; that he had constructed ponds on or near it, and had otherwise exercised dominion over it. There was no contest of his title or his right of use in the trial of the case, and it comes too late now.

On the issue of damages, the trial court instructed the jury that if the obstruction of the flume in 1948 proximately caused the appellee to lose his crops consisting of wheat, hay, corn and potatoes, and a portion of his lamb crop, they could award him the market value of such losses, less all expenses reasonably incurred in raising, cultivating and harvesting the agricultural crops, and all expenses incident to the raising of the lambs to market time. The jury was also instructed that in awarding damages, it could take into consideration the cost of replanting an alfalfa field, if it believed from a preponderance of the evidence that the replanting was proximately caused by the disconnection of the flume. Then the jury was told that if it believed from the evidence that the Railroad's conduct had lessened the rental value of his grazing land by cutting off the water supply, they could award appellee the difference between the fair rental value of the grazing land during the fall and winter that the flume was in operation, and the fair rental value of the land during the fall and winter without the water from the flume.

These instructions are in accordance with the applicable law of Utah and elsewhere. See Cleary v. Shand, 48 Utah 640, 161 P. 453; Naylor v. Floor, 51 Utah 382, 170 P. 971; Tripp v. Bagley, 75 Utah 42, 282 P. 1026; Bigler v. Fryer, 82 Utah 380, 25 P.2d 598; Adamson v. Brockbank, Utah, 185 P.2d 264, 279; Beville v. Allen, 28 Ariz. 397, 237 P. 184; Ringwald v. Sadlowski, 237 App.Div. 59, 260 N.Y.S. 532; Humble Pipe Line Co. v. Day, Tex.Civ. App. 172 S.W.2d 356; Sedgwick on Damages, 9th Ed., Vol. 3, Sections 927, 937 and 937a; Amer.Juris. Damages, Sections 108 and 110. There is no contention that the verdict was in excess of the proof of damages.

The judgment is affirmed.